(113 So. 28)

BEVILL v. WILKINS. (6 Div. 864.)

Supreme Court of Alabama. April 14, 1927.

Rehearing Denied June 2, 1927.

1. Trover and conversion ⊙⇒36—Contract to saw plaintiff's lumber held admissible, in action to recover for lumber purchased by defendant from sawmill owner.

In action to recover for lumber purchased by defendant from B., and credited against B.'s personal debt to defendant, who knew that lumber belonged to plaintiff, held that contract between plaintiff and B., in which B. agreed to saw plaintiff's lumber at specified rate, was admissible under the pleadings and issues.

2. Appeal and error ⊙⇒1050(1)—Evidence of other sales of plaintiff's lumber by sawmill owner to show conduct of parties and mill owner's authority to sell, held not prejudicial.

In action to recover for lumber purchased by defendant from B., and credited against B.'s personal debt, to defendant who knew that lumber belonged to plaintiff, held that evidence of other sales of lumber by B. to different persons, was admissible to show conduct of parties and B.'s authority to sell and account for lumber and plaintiff's alleged revocation of that authority, or at least admission thereof was not prejudicial to defendant.

3. Evidence ⊙⇒471(9)—In action to recover for lumber, question as to whether plaintiff came to collect money for lumber held objectionable as calling for conclusion of witness.

In action to recover for plaintiff's lumber purchased from sawmill owner, who was sawing it for plaintiff, question, "Now what did you tell" plaintiff—"did" plaintiff "come up there and want to collect for that lumber?" asked of defendant testifying in his own behalf, held subject to objection as calling for conclusion of witness, and objectionable feature was not eliminated by renewal of first part of question.

4. Evidence ⊙⇒220(1)—Testimony as to defendant's failure to claim that lumber purchased from another did not belong to plaintiff held admissible as in nature of guilty silence when defendant should have spoken.

In action to recover for lumber purchased by defendant from B., and credited against B.'s personal debt to defendant, who knew that lumber belonged to plaintiff, permitting plaintiff to testify that, in a conversation with defendant, defendant did not claim that lumber belonged to another than plaintiff held not error; defendant's silence being in nature of a guilty silence at a time when he should have spoken, if such was the fact.

5. Principal and agent ⊙⇒103(10)—Agent cannot pay his personal debts with principal's properties.

An agent has no right to pay his personal debts with properties of his principal.

6. Trial ⊙⇒139(1)—Affirmative instruction should be refused, if there is scintilla of evidence or reasonable contrary inference.

If there is a scintilla of evidence or reasonable inference to be drawn contrary to affirmative instruction requested, it should be refused.

7. Trial ⊙⇒261—Defendant's requested charge, defective because of omitted words, held properly refused.

Defendant's requested charge defective in omitting word "satisfied" after the words "further reasonably" and before the word "evidence," held properly refused.

8. Trial ⊙⇒253(10)—In action to recover for lumber, defendant's requested instructions, pretermitting tendency of evidence that defendant knew lumber belonged to plaintiff, held properly refused.

In action to recover for lumber purchased by defendant from B., and credited against B.'s personal debt to defendant, who knew that lumber belonged to plaintiff, defendant's requested instructions pretermitting the tendency

of evidence that defendant knew lumber belonged to plaintiff and that he was purchasing and receiving lumber in payment of B.'s debt to defendant, which plaintiff had previously refused to authorize, *held* properly refused.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Action by W. D. Wilkins, doing business as Walker County Lumber Company, against Herman Bevill. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Affirmed.

Count 1 is for conversion of 12,000 feet of lumber, count 2, for the wrongful taking of same, count 3, for willfully and unlawfully taking the goods, and count 4, for goods, wares, and merchandise sold by the plaintiff to the defendant.

Defendant filed the general issue to each of the counts, and a plea of the three-year statute of limitations to count 4.

Plaintiff's theory of the case is that he was operating a sawmill and planing mill; that R. Bowman also owned a sawmill; that plaintiff bought timber and hired Bowman to saw same on Bowman's mill at a stipulated price per thousand feet; that Bowman had no authority from plaintiff to sell any lumber; that defendant, Bevill, got from Bowman a lot of plaintiff's lumber in payment of a debt owing by Bowman to Bevill; that Bevill got such lumber knowing that it was plaintiff's, after plaintiff had refused to agree to his getting it under such circumstances.

Defendant's theory is that the lumber Bevill got belonged to Bowman, and was sawed from timber Bowman had acquired from one Miller, and that Bowman had authority to sell plaintiff's lumber generally.

Defendant, as a witness, testified that, after having bought from and settled with Bowman for a load of lumber, plaintiff came up and had a conversation with him. He was asked this question:

"Now, what did you tell Mr. Wilkins—did Mr. Wilkins come up there and want to collect for that lumber?"

The bill of exceptions recites:

"The plaintiff objected to the question on the grounds because it calls for incompetent, irrelevant, and immaterial testimony, and calls for an opinion or conclusion of the witness. The court said: 'I sustain the objection to that part of the question, "Did he come up there and want to collect for this lumber," as calling for a conclusion.' The defendant duly excepted to the court's ruling.

"The witness continued: 'He came up there and stated to me that he wanted to collect for the lumber. In that conversation I told him that I had paid Mr. Bowman for the lumber. He asked me for the amount of lumber I had bought from Mr. Bowman. I gave it to him. In that conversation I told him it was 1,006 feet. In that conversation I did not state or

admit to Mr. Wilkins that I knew it was his lumber. * * * In that conversation he did not say anything to me about not paying Bowman for the 1,006 feet. He made no objections to my keeping the lumber.' "

The following charges were given at plaintiff's request:

"X. I charge you that, if you are reasonably satisfied that Bowman had authority to sell and collect for lumber for the plaintiff, yet, if Bowman sold the plaintiff's lumber to Bevill, and Bevill gave Bowman's credit for Bowman's account, and Bevill knew when he bought the lumber it was the lumber of plaintiff, and if you are reasonably satisfied of these facts, then Bevill converted the lumber, and plaintiff should recover in this case."

"(5) Although you may believe that Bowman was authorized to sell lumber of plaintiff, I charge you that he had no right to sell it in payment of his personal debt."

"(6) If Bowman let Bevill have lumber that belonged to the plaintiff, and had authority to let him have it, and Bevill knew it belonged to the plaintiff, and knew that Bowman had authority to sell the lumber, yet I charge you that Bevill could not pay for the lumber by giving Bowman credit for his personal account."

Charges 7 and 10, refused to defendant, are as follows:

"(7) The court charges the jury that, if you are reasonably satisfied from the evidence that Bowman had authority to sell the lumber and did sell the lumber as the agent of Wilkins in the exercise of such authority, then the plaintiff cannot recover under either counts 1 or 2 of the complaint."

"(10) The court charges the jury that, if you are reasonably satisfied from the evidence that Bowman had authority to sell the lumber and did sell it in the exercise of such authority, then plaintiff is not entitled to recover under either count 1 or 2, and that would be true even though you are further reasonably satisfied from the evidence that all the lumber belonged to Wilkins."

J. J. Ray and R. A. Cooner, both of Jasper, for appellant.

Counsel argue for error in the questions raised and treated, but without citing authorities.

J. D. Acuff and J. M. Pennington, both of Jasper, for appellee.

Counsel discuss the questions raised, but cite no authorities.

THOMAS, J. The first appeal on judgment granting a new trial is reported as Bevill v. Wilkins, 20 Ala. App. 510, 103 So. 306.

[1] The contract, made in the fall of 1921 or spring of 1922, by W. D. Wilkins with Bowman, to cut, load, and saw lumber and "put it on the sticks," at a given price per thousand, was within the pleadings and issues of fact tried between said Wilkins as plaintiff and Herman Bevill as defendant.

That evidence was necessary and explanatory under the issues of fact to be tried—the indebtedness vel non of defendant Bevill to Wilkins. The witness was allowed to testify that Bevill came to see plaintiff "about taking up the debt that Bowman owed Bevill" in "lumber and charging it to Bowman," which offer was declined, and that about two months thereafter witness identified 2,000 feet of plaintiff's lumber "at Bevill's place" that witness had marked a "few days before at the mill"; that plaintiff "did all of the selling" of his lumber, and Bowman was "sawing and running the mill." This witness was asked on cross-examination, "Can you give any idea, if you can do so, of the amount of lumber that you saw at Bevill's place with your mark on it that was piled up?" and answered as follows:

"While there wasn't but just a piece or two with a mark on it, but in the pile there must have been about a couple of thousand feet. Now in that building I don't know whether that was Walker County Lumber Company built in the building or not. I couldn't say whether the lumber came from the building or not. It was new, just under construction. There was a garage he was building there. It looked just like a garage. At the time he came to see me and my brother, I don't know whether he said he wanted to build a garage, but he said he wanted about $200 worth and charge it to Mr. Bowman. At the time I saw the lumber down there it was pretty close to the garage. I don't think the top was on the garage.

"Was the balance of the lumber there that you could recognize suitable to complete that building? To the best of my recollection I believe it was."

The other evidence tended to show that Bevill had gotten from said mill about 10,526 feet of lumber, and that it was worth about $20.

Defendant's evidence tended to show that Bowman had authority from Wilkins "to sell lumber for him (Wilkins) and collect for it, * * * for the lumber"; that he sold to all who applied therefor, including said Bevill; that, as agent of Wilkins, he sold to said party (and others or Myers, Cunningham, Bob Key) 1,006 feet; that he reported to Wilkins, and the latter asked him to hold up on outside sales; that he sold defendant 2,000 feet of witness' "individual lumber" that he had acquired by sawing "on the halves" with Mr. Bill Miller and Hester NeSmith; that he and Wilkins had mutual accounts.

[2] It was competent to show other sales of lumber to different parties to illustrate the conduct of these parties and shed light upon the testimony tending to give Bowman the right to sell and account, and the alleged revocation of that authority by plaintiff. At least, the rulings were not prejudicial to defendant. However, it was immaterial to show by Myers what became of the lumber that he or his brother-in-law purchased of Bowman. There was no error in adverse ruling to defendant as to witness Myers selling timber to Bowman "direct." The witness had stated the fact of his sale of "some timber just before he moved from there," and "could not say what year it was," and could not tell when Bowman left there or how long before that time he sold the timber to Bowman.

[3] The question sought to be propounded by defendant, Herman Bevill, as witness in his own behalf, was subject to objection as a conclusion as indicated by the court. The objectionable feature was not eliminated by a renewal of that part of the question, "Now what did you tell Mr. Wilkins?" The court was not required to separate. Lester v. Jacobs, 212 Ala. 614, 103 So. 682.

[4] There was no error in allowing the plaintiff to testify that Bevill did not tell him, in the conversation indicated, "that Bowman had let him have the Miller lumber," or claimed such to have been the fact, or that he was so informed by Bevill before the first trial. It was in the nature of a guilty silence at a time when he should have spoken, if such was the fact. Ivy v. Hood, 202 Ala. 121, 79 So. 587. The answer that he was informed "by different parties that he (Bowman) was selling lumber over there to Tom, Dick, and Harry—anybody that comes along" —and that witness, the plaintiff, "investigated it," and such report was limited by the court to the fact of permission vel non by the plaintiff of Bowman's right to sell lumber sawed at his mill. The witness concluded by saying he investigated and forbade him making "any more sales." It was without error or limit.

[5] An agent has no right to pay his personal debts with properties of his principal. There was no tendency of evidence of such authority. Plaintiff's charges Nos. 5, 6, and X were properly given.

[6] If there is a scintilla of evidence or reasonable inference to be drawn contrary to the affirmative instruction sought, the same should be refused. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. A jury question was presented under count 4 of the complaint. There was evidence of mutual accounts between plaintiff and Bowman, and their contractual relations were necessary to a full understanding and ascertainment of the question of indebtedness vel non of the defendant purchasing lumber of Bowman. The several affirmative instructions requested by the defendant were properly refused.

[7] Charge 10, refused to the defendant, omitted the word "satisfied" after the words "further reasonably" and for such reason the trial court was justified in its refusal.

[8] Refused charge 8 was in the following words:

"The court charges the jury that, if you are reasonably satisfied from the evidence that Bowman had authority to sell the lumber of

Wilkins and that he sold the lumber in the exercise of such authority, then defendant would not be liable for converting the lumber, nor for wrongfully taking the lumber, and could not recover in that event under *either counts 1 or 2 of the complaint.*"

Count 1 was for the conversion, and count 2 was for the wrongful taking.

Refused charges 7 and 8 pretermit the tendency of the evidence that Bevill knew the lumber belonged to Wilkins, and that he was purchasing and receiving the lumber in payment of Bowman's debt to the defendant, and this Wilkins has refused to authorize. It was the nature of the sale and payment that authorized submission to the jury under a phase of the evidence as applicable to counts 1 and 2.

We have carefully examined the evidence and grounds of the motion and find no error of ruling by the trial court.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.